17 MAG. 5680

Approved: _____
DAVID ABRAMOWICZ
Assistant United States Attorney

Before:   HONORABLE KATHARINE H. PARKER
          United States Magistrate Judge
          Southern District of New York

- - - - - - - - - - - - - - - X
                              :
UNITED STATES OF AMERICA       :      **SEALED COMPLAINT**
                              :
        - v. -                 :      Violation of
                              :      18 U.S.C §§ 1343
PATRICK MURACA,                :      and 2.
                              :
              Defendant.       :      COUNTY OF OFFENSE:
                              :      NEW YORK
- - - - - - - - - - - - - - - X


SOUTHERN DISTRICT OF NEW YORK, ss.:

        MATTHEW B. TAYLOR, being duly sworn, deposes and says that
he is a Special Agent with the Federal Bureau of Investigation
("FBI") and charges as follows:

COUNT ONE
(Wire Fraud)

        1.    From at least in or about May 2016, up to and
including at least in or about June 2017, in the Southern
District of New York and elsewhere, PATRICK MURACA, the
defendant, willfully and knowingly, having devised and intending
to devise a scheme and artifice to defraud, and for obtaining
money and property by means of false and fraudulent pretenses,
representations, and promises, did transmit and cause to be
transmitted by means of wire, radio, and television
communication in interstate and foreign commerce, writings,
signs, signals, pictures, and sounds for the purpose of
executing such scheme and artifice, to wit, MURACA defrauded
investors in two companies he founded and controlled by
soliciting investments purportedly to expand the companies'
businesses, and then misappropriating the invested funds for
MURACA's personal use, and in connection therewith and in

furtherance thereof, MURACA transmitted and caused to be
transmitted interstate e-mails and wire transfers of funds.

(Title 18, United States Code, Sections 1343 and 2.)


The bases for my knowledge and the foregoing charges are,
in part, as follows:

2.    I am a Special Agent with the FBI.  I am currently
assigned to a squad responsible for investigating wire fraud,
bank fraud, securities fraud, money laundering, and other white-
collar offenses.  I am familiar with the facts and circumstances
set forth below from my personal participation in the
investigation, including my examination of reports and records,
interviews I have conducted, and conversations with other law
enforcement officers and other individuals.  Because this
affidavit is being submitted for the limited purpose of
establishing probable cause, it does not include all the facts
that I have learned during the course of my investigation.
Where the contents of documents and the actions, statements and
conversations of others are reported herein, they are reported
in substance and in part, unless noted otherwise.

Overview of the Fraud

3.    As set forth in further detail below, from at least in
or about May 2016 up to and including in or about June 2017,
PATRICK MURACA, the defendant, solicited and received a total of
more than approximately $1 million from investors by making
false and misleading representations that the investors' money
would be used to expand the business of NanoMolecularDX LLC
("NanoMolecular") or MetaboRx LLC ("Metabo"), two companies
owned and controlled by MURACA.

4.    In truth and in fact, however, PATRICK MURACA, the
defendant, misappropriated hundreds of thousands of dollars of
these investors' funds and used the misappropriated money for
personal expenses.  For example, MURACA used tens of thousands
of dollars of investor funds to cover rent, utilities, and food
distributor expenses related to the operation of a restaurant
owned by MURACA's fiancée (the "Restaurant"), and MURACA wrote
approximately $176,000 in checks to himself from the bank
accounts associated with NanoMolecular and Metabo (the
"NanoMolecular Bank Account" and the "Metabo Bank Account,"
respectively).

2

MURACA's Companies and the Restaurant

5.    Based on my review of publicly available documents and
bank records, I have learned, in sum and substance, the
following:

a.    PATRICK MURACA, the defendant, has maintained a
personal bank account at a bank in Massachusetts ("Bank-1")
since in or about April 2003.  MURACA is the only authorized
signatory on that account.

b.    Nuclea Biotechnologies, Inc. ("Nuclea") was
incorporated in or about January 2007.  MURACA held different
management positions, including President, at Nuclea from its
incorporation until he left the company in or about December
2015.  In or about August 2016, Nuclea filed for bankruptcy in
United States Bankruptcy Court in Delaware.

c.    NanoMolecular was incorporated in or about May
2016.  The NanoMolecular Bank Account was opened in the name of
NanoMolecular at a Massachusetts bank ("Bank-2") in or about May
2016.  Records from the NanoMolecular Bank Account list MURACA
as an owner of NanoMolecular and an authorized signatory on the
account.

d.    Metabo was incorporated in or about March 2016.
The Metabo Bank Account was opened in the name of Metabo at
Bank-2 in or about January 2017.  Records from the Metabo Bank
Account list MURACA as an authorized signatory on the account.

6.    On or about April 4, 2017, PATRICK MURACA, the
defendant, testified under oath in a deposition conducted by the
United States Securities and Exchange Commission (the "SEC
Deposition").  During the SEC Deposition, MURACA stated, in sum
and substance, the following:

a.    Nuclea was a biotechnology company that at one
point had approximately $48 million worth of assets.

b.    NanoMolecular's primary business purpose is to
develop medical diagnostic tests to be used in laboratories,
doctors' offices, and hospitals.  MURACA controls the
NanoMolecular Bank Account, which is the sole bank account used
by NanoMolecular.  MURACA has a monthly salary from
NanoMolecular of $4,000 plus a $1,000 "car allowance," but he
collects the salary "only when we have the money to be able to

3

do it." There is no reason for personal expenses to be charged to the NanoMolecular Bank Account.

       c.    Metabo is a pharmaceutical company. MURACA controls the Metabo Bank Account, which is the sole bank account used by Metabo. Metabo does not have any operating costs. MURACA has not drawn any salary from Metabo, and he has accepted reimbursement from Metabo only for travel expenses.

       d.    Until in or about February 2017, MURACA's fiancée owned the Restaurant, located in Lee, Massachusetts.

Representations to Victims

    7.    Based on my review of bank records and my interviews of, and review of documents provided by, an individual who invested in Nuclea, NanoMolecular, and Metabo ("Victim-1"), I have learned, in sum and substance, the following:

       a.    In or about 2010 or 2011, Victim-1 invested approximately $75,000 to $100,000 in Nuclea, which Victim-1 learned about through a colleague ("Individual-1") who worked with Victim-1 at a firm in the financial industry. Victim-1 did not earn any returns on Victim-1's investment in Nuclea.

       b.    In or about 2016, Victim-1 spoke with PATRICK MURACA, the defendant, who encouraged Victim-1 to invest in NanoMolecular. MURACA told Victim-1 that any funds Victim-1 invested would be used to expand and develop NanoMolecular's business. From on or about July 5, 2016, until on or about February 17, 2017, Victim-1 invested a total of approximately $55,000 in NanoMolecular. Victim-1 wired approximately $35,000 of that amount from a bank account located in New York, New York, to the NanoMolecular Bank Account in Massachusetts. Victim-1 would not have invested funds in NanoMolecular had Victim-1 believed that the funds would be used for MURACA's personal expenses.

       c.    In or about January 2017, MURACA solicited additional investments from Victim-1, this time for Metabo. MURACA represented to Victim-1 that any funds Victim-1 invested would be used to expand and develop Metabo's business. On or about January 25, 2017, Victim-1 invested approximately $50,000 in Metabo, wiring the funds from a bank account in New York, New York, to the Metabo Bank Account in Massachusetts. Victim-1 would not have invested funds in Metabo had Victim-1 believed that the funds would be used for MURACA's personal expenses.

4

8.    Based on my review of bank records and my interviews of, and review of documents provided by, another individual who invested in Nuclea, NanoMolecular, and Metabo ("Victim-2"), I have learned, in sum and substance, the following:

a.    In or about 2009, Victim-2 invested a total of approximately $50,000 to $60,000 in Nuclea, which Victim-2 learned about through Individual-1, who worked with Victim-2 at two separate firms in the financial industry.  Victim-2 did not earn any returns on that investment.

b.    In or about 2016, Victim-2 spoke with PATRICK MURACA, the defendant, who encouraged Victim-2 to invest in NanoMolecular.  MURACA told Victim-2 that any funds Victim-2 invested would be used to expand and develop NanoMolecular's business.  From in or about July 2016 until in or about February 2017, Victim-2 invested a total of approximately $55,000 in NanoMolecular.  Victim-2 would not have invested funds in NanoMolecular had Victim-2 believed that the funds would be used for MURACA's personal expenses.

c.    In or about January 2017, MURACA solicited investments from Victim-2, this time for Metabo.  MURACA represented to Victim-2 that any funds Victim-2 invested would be used to expand and develop Metabo's business.  On or about January 26 and 27, 2017, Victim-2 invested a total of approximately $50,000 in Metabo.  Victim-2 would not have invested funds in Metabo had Victim-2 believed that the funds would be used for MURACA's personal expenses.

9.    Based on my review of documents provided to investors, bank records, and interviews with witnesses and investors in NanoMolecular and Metabo other than Victim-1 and Victim-2, I have learned that from at least in or about May 2016 up to and including in or about June 2017, PATRICK MURACA, the defendant, solicited and received a total of more than approximately $1 million from investors other than Victim-1 and Victim-2 based on false and misleading representations that these investors' money would similarly be used to expand the business of NanoMolecular or Metabo.

## Use of the Investor Funds

10.   Based on my review of records from the NanoMolecular Bank Account, I have learned, in sum and substance, the following:

a.   On or about August 25, 2016, Victim-1 wired approximately $10,000 to the NanoMolecular Bank Account.   The account had a balance of approximately $388.62 before the transfer, and a balance of approximately $10,373.62 immediately after the transfer.   From on or about August 25, 2016, through on or about September 12, 2016, no other deposits were made into the NanoMolecular Bank Account.   From on or about August 26, 2016, through on or about September 12, 2016, PATRICK MURACA, the defendant, wrote four checks, all payable to himself, for a total of $10,000.   Following the withdrawal of funds for those checks, the balance in the NanoMolecular Bank Account on or about September 12, 2016, was approximately $23.62.

b.   On or about November 8, 2016, Victim-1 wired approximately $10,000 into the NanoMolecular Bank Account, and Victim-2 wired approximately $20,000 into the NanoMolecular Bank Account.   The account had been overdrawn by approximately $2,901.54 before those wire transfers.   Other than those wire transfers and three additional deposits of approximately $200 each, no additional funds were deposited into the NanoMolecular Bank Account from on or about November 8, 2016, through on or about November 22, 2016.   The ending balance in the NanoMolecular Bank Account on or about November 22, 2016, was approximately $117.91.   From on or about November 8, 2016, through November 22, 2016, the vast majority of the funds withdrawn from the NanoMolecular Bank Account were used for apparently personal or other non-business purposes.   Those transactions included, among other things, the following:

i.   On or about November 9, 2016, approximately $1,006.68 was paid to a food service distributor (the "Food Distributor").   Based on my review of records from the Food Distributor, the Food Distributor routinely supplied food to the Restaurant, and the payment of approximately $1,006.68 on or about November 9, 2016, went toward the purchase of lobster meat and roast beef, among other items.

ii.   On or about November 10, 2016, approximately $438.68 was paid to an online ticket retailer for four tickets to a concert by the Trans-Siberian Orchestra.

6

             iii.      On or about November 10, 2016, approximately $2,502.13 was paid to a gas company to cover the utilities bill for the Restaurant.

             iv.      On or about November 10, 2016, approximately $1,300 was paid to a bank for a mortgage associated with the mother of PATRICK MURACA, the defendant.

             v.      On or about November 14, 2016, approximately $367 was paid to a cigar company located in Albany, New York.

             vi.      On or about November 14, 2016, approximately $577.73 was paid to the Food Distributor for ribeye steaks, among other items.

             vii.      On or about November 14, 2016, approximately $450 was paid to an insurance company for policies on a 1998 Chevrolet Corvette, a 1978 Chevrolet Corvette, a 2008 Ford F350, and a 2010 Lexus RX350, all of which were insured in the name of MURACA.

    11.  Based on my review of records from the Metabo Bank Account, I have learned, in sum and substance, the following:

        a.    From on or about January 25, 2017, up to and including on or about January 27, 2017, Victim-1 and Victim-2 wired a total of approximately $100,000 to the Metabo Bank Account. Before those wires were deposited, the Metabo Bank Account had a balance of approximately $10. Following the wires from Victim-1 and Victim-2, the Metabo Bank Account had a total balance of approximately $99,965.

        b.    Other than the wires described above from Victim-1 and Victim-2, from on or about January 25, 2017, through on or about April 17, 2017, no other funds were deposited into the Metabo Bank Account. During that same period, all but approximately $3,193.34 was withdrawn from the Metabo Bank Account. The vast majority of the funds withdrawn from the Metabo Bank Account during that period were used for apparently personal or other non-business purposes. Those transactions included, among other things, approximately $23,523 in payments made directly to PATRICK MURACA, the defendant; approximately $996.61 paid to the Food Distributor on or about February 14, 2017; approximately $900 paid to a gas company to cover the utilities bill for a property associated with MURACA's mother on or about February 15, 2017; approximately $500 withdrawn from an Automated Teller Machine in Lee, Massachusetts, on or about

February 21, 2017; approximately $304.18 paid to a tattoo and
piercing shop in Northampton, Massachusetts, on or about March
13, 2017; and approximately $216.60 paid to a cigar store in
Albany, New York, on or about March 20, 2017.

         WHEREFORE, deponent prays that an arrest warrant be issued
for PATRICK MURACA, the defendant, and that he be arrested and
imprisoned or bailed, as the case may be.

                                    _____
                                    MATTHEW B. TAYLOR
                                    Special Agent
                                    Federal Bureau of Investigation

Sworn to before me this
28th day of July, 2017

_____
HONORABLE KATHARINE H. PARKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK